UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MIGUEL ANGEL BENITEZ-GARAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) Civil Action No. SA-18-CA-422-XR |
| | ) |
| DEPARTMENT OF HOMELAND SECURITY, ET AL., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

On this date, the Court considered its jurisdiction over this petition for writ of habeas corpus. Although this case presents sympathetic facts, the Court concludes that relief is not available in this Court because it lacks jurisdiction.

**Background**

According to the Petition and the records before the Court, Petitioner Benitez-Garay, an El Salvadoran national, entered the United States in 2000 or 2001 without inspection. He was ordered removed by an Immigration Judge in August 2006.[1] He was removed much later in 2015. He re-entered the United States in early 2016. In 2017, apparently after being arrested on a misdemeanor charge and being subsequently charged with unlawful re-entry (for which he received a sentence of time served and one year of probation), he expressed a fear of returning to El Salvador and was given an interview with an asylum officer. The officer determined that Petitioner did not establish a reasonable fear of persecution or torture.

The asylum officer's negative reasonable fear determination was vacated in September 2017, and Petitioner was placed in withholding-only proceedings wherein he applied for withholding of removal under § 241(b)(3) of the INA and protection under the Convention Against

---

[1] The Court is not specifically informed whether this removal order qualifies as an expedited removal order under 8 U.S.C. § 1225(b)(1), but it does not appear to be.

1

Torture ("CAT").[2] His initial hearing was scheduled for February 15, 2018.

In September 2017, while in ICE custody in the Federal Bureau of Prisons, Petitioner was diagnosed with cancer. Petitioner asserts that, despite his severe condition, for a period of approximately one month in November 2017, he was denied medical treatment and drugs. Docket no. 6 at 5-6. Petitioner further contends that ICE took no steps to ensure he would get adequate medical care for his condition after removal to El Salvador. *Id.* at 6.

In October 2017, Petitioner started working with Homeland Security Investigations ("HSI") agents on drug-related activity in the Austin area, and they promised to help him with his immigration proceedings and "get him out." Docket no. 6 at 7. On October 25, 2017, DHS filed a motion to move up Petitioner's hearing to October 30, 2017 (from February 2018), and the motion was granted that same day. Petitioner alleges this was done without notice or opportunity to respond, and the motion was based on the fact that he had cancer. *Id.*

At the October 30 hearing, the Immigration Judge ("IJ") denied Petitioner's claims for withholding under INA § 241(b)(3) and the CAT, and ordered Petitioner removed to El Salvador. Petitioner waived his right to appeal, as he had been instructed to do by HSI agents. He was released shortly thereafter, and an Agent Soto was waiting for him. On December 15, 2017, Petitioner was granted a one-year deferred action (from December 16, 2017 to December 16, 2018) by ICE through the Special Agent in Charge of the San Antonio HSI Field Office. Petitioner was notified that, while in deferred-action status, he was required to obey all federal, state, and local laws. Petitioner met with HSI throughout November 2017 to February 2018.

Petitioner was then arrested for violating his probation for using drugs. Petitioner contends that, instead of going to jail, he was sent to ICE custody at Pearsall. At first, Petitioner was depressed and consented to removal, and ICE began making removal arrangements. However, after speaking with another detainee, Petitioner obtained representation from his current counsel. Petitioner's new counsel then filed an application for stay of removal with ICE on March 2, 2018 and a motion to reopen his immigration proceedings with the immigration court on March 5, 2018. Petitioner was granted an emergency stay to allow the IJ to evaluate his motion to reopen.

On March 23, the IJ denied the motion to reopen, finding the motion untimely because it

---

2 To prevail on a petition for withholding of removal under the INA, § 1231(b)(3), an alien must demonstrate "that there is a clear probability that he will be subject to persecution" on account of "race, religion, nationality, membership in a particular social group, or political opinion." *Moreno v. Sessions*, 694 F. App'x 391, 395 (6th Cir. 2017).

was filed more than 90 days after the IJ's October 30, 2017 decision, and the IJ vacated the stay of removal. Petitioner appealed the decision to the Board of Immigration Appeals ("BIA") and filed an emergency motion to stay removal on March 29. The BIA denied his stay of removal on April 18, 2018. On April 24, Petitioner filed an emergency motion to reconsider the stay with the BIA, which was denied on May 2. Petitioner filed his brief on appeal with the BIA on May 2.

On May 7, Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and an accompanying motion for Temporary Restraining Order ("TRO"), seeking to prevent his removal from the United States "until he is provided adequate medical care, assurance of continued care, and through a completed and appropriate due process it has been determined whether, in light of current conditions and circumstances, he is entitled to mandatory protection from removal and to re-open his matter before the Board of Immigration Appeals." In the "Jurisdiction" section of the petition, Petitioner asserts various bases for jurisdiction, including this Court's habeas corpus jurisdiction under 28 U.S.C. §2241 and Article I, § 9 cl. 2 (Suspension Clause), federal question jurisdiction 28 U.S.C. §1331, the mandamus statute 28 U.S.C. § 1361, the Administrative Procedures Act 5 U.S.C. § 701 *et seq.*, Article III and Amendment V of the Constitution, and the common law. Petitioner also contends that this Court may grant relief pursuant to the Declaratory Judgments Act, the All Writs Act, and *Ex Parte Young*. Petitioner asserts that this case arises under the United States Constitution; the Immigration and Nationality Act ("the INA"); the regulations implementing the INA's asylum and expedited removal provisions, the Convention Against Torture ("the CAT"), the Foreign Affairs Reform and Restructuring Act of 1998 (the "FARRA"), and the Administrative Procedure Act ("the APA"). Docket no. 1 § 10.

Last, Petitioner asserts that, "[w]hile the courts of appeal have jurisdiction to review removal orders directly through petitions for review, see 8 U.S.C. § 1252(a)(1), (b), the federal district courts have jurisdiction under 28 U.S.C. §2241 to hear habeas claims by non-citizens challenging the lawfulness or constitutionality of their detention by ICE. See, e.g., Demore v. Kim, 538 U.S. at 516-17; Zadvydas v. Davis, 533 U.S. at 687; Nnadika v. Attorney General of U.S., 484 U.S. 626, 632 (3rd Cir. 2007) (holding that, post-REAL ID, challenges to detention remain within the jurisdiction of the district court.)" Docket no. 1 § 9.

The Petition includes various claims asserting violations of Petitioner's right to due

process in the underlying proceedings and asserts that Petitioner is protected from removal under the CAT. It further asserts that Petitioner is entitled to adequate medical treatment as a detainee. This claim asserts in part that Respondents are denying him needed medical care by scheduling his deportation, knowing that the necessary medical care will not be available to him in El Salvador.

Petitioner asked this Court to assume jurisdiction, declare his detention unlawful, order that he be provided adequate medical care for the duration of his illness, and order his release from custody and, in the alternative, order a full and complete medical evaluation prior to deportation, and, in the alternative, enjoin Respondents from removing him until he has exhausted his immigration procedures, and enjoin Respondents from transferring him outside this district.

On May 8, this Court denied Petitioner's motion for TRO, finding that Petitioner had failed to establish jurisdiction. Thereafter, the Court issued a Show Cause Order to Petitioner to demonstrate why this case should not be dismissed for lack of subject matter jurisdiction and to inform the Court whether Petitioner had been removed. Petitioner responded that Petitioner was removed after the Court denied his TRO, but argues that the Court nevertheless has jurisdiction over this matter.

Petitioner informed the Court that, on November 15, 2018, the BIA dismissed his appeal from the IJ's March 23 order denying his motion to reopen. Docket no. 7. Two BIA members affirmed the denial of the motion to reopen as untimely, noting that Petitioner was not entitled to equitable tolling because he could have filed a timely motion to reopen based on his due process argument that the Immigration Judge erred in granting the motion to advance his individual hearing on the same day it was filed and had begun cooperating with HSI during the 90-day period for filing motions to re-open, but instead waited until his deferred action was revoked to file the motion to reopen. A dissenting board member would have found exceptional circumstances based on the fact that Petitioner, "pro se and newly diagnosed with leukemia, was not given adequate time to respond to the Department of Homeland Security's motion to advance his individual merits hearing date from February 15, 2018 to October 30, 201[8]." Docket no. 7-1.

Records indicate that Petitioner filed a petition for review in the Fifth Circuit Court of Appeals on December 14, 2018. No. 18-60859. Petitioner's brief is due March 4, 2019.

**Analysis**

In May 2005, Congress passed the REAL-ID Act, which "divested federal [district] courts

of jurisdiction over § 2241 [habeas] petitions attacking removal orders." *Rosales v. Bureau of Immigration & Customs Enforcement*, 426 F.3d 733, 736 (5th Cir. 2005). The Real-ID Act altered the way in which aliens may seek judicial review of administrative orders of removal. *Jean v. Gonzales*, 452 F.3d 392, 396 (5th Cir. 2006). Under the Act, "[n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of [Chapter 12], except as provided in subsection (e) [of section 1252]." 8 U.S.C.A. § 1252(a)(5). "[T]he terms 'judicial review' and 'jurisdiction to review' include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory)." *Id.* Thus, the Act strips the district courts of jurisdiction to review general removal orders, via a petition for habeas corpus, leaving review of such orders to the courts of appeals.[3]

This Court previously concluded in denying the motion for TRO that Petitioner's claims exceeded the scope of this Court's jurisdiction and seek relief that is expressly disallowed by REAL ID. The Court therefore directed Petitioner to show cause why the petition should not be dismissed for lack of subject matter jurisdiction. In response, Petitioner contends that his claims are not barred by REAL ID because he raises due process arguments – that he was denied essential due process rights that significantly prejudiced him to the extent of extinguishing his legal rights and that he was denied due process by the denial of adequate medical care. Petitioner contends that he "does not challenge the order of removal per se, but does challenge the unfair treatment and denial of medical care that he received from defendants-Respondents leading up to, during and subsequent to his removal and which violated his due process rights." Docket no. 6 at 1-2. Alternatively, he contends that, if the Court does characterize his claims as challenging a final

---

3 Limited habeas jurisdiction remains only under § 1252(e) with respect to expedited removal orders issued under § 1225(b)(1). Judicial review of expedited removal orders in the district court is limited to determinations of (A) whether the petitioner is an alien, (B) whether the petitioner was ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157, or has been granted asylum under section 1158, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C).

5

order of removal, then the REAL-ID Act as applied to his claims is inconsistent with the Suspension Clause of the U.S. Constitution. *Id.*

### A. Whether Petitioner is challenging the order of removal and whether certain claims are moot due to Petitioner's removal

To determine the true nature of Petitioner's claims, the Court must consult the petition itself and the forms of relief sought therein. The Introduction section of the petition states, "This is a Petition for *Habeas Corpus* . . . filed by Plaintiff-Petitioner Miguel Angel Benitez-Garay . . . *to bar his removal from the United States* until he is provided adequate medical care, assurance of continued care, and through a completed and appropriate due process it has been determined whether, in light of current conditions and circumstances, [he] is entitled to mandatory protection from removal and to re-open his matter before the Board of Immigration Appeals." Docket no. 1 ¶ 1 (emphasis added). The Petition then contains a "Legal Framework," that includes three sub-parts: (1) a section arguing that Petitioner was denied due process in the determination of his asylum application through (a) false representations/misleading him about the procedure and possibility of success, (b) denying him adequate time to prepare for his hearing, and (c) HSI agents stating they would facilitate his immigration determination so that he would be permitted to remain but they did not do so; (2) a section arguing that immigration detainees are entitled to adequate medical care including access to treatment and drugs, and asserting that Petitioner has been denied access to treatment in a manner that will cause him injury; and (3) a section on "Protection from Removal" legal standards.

The Claims for Relief include: (1) Count I – Petitioner was denied due process in the determination of his asylum (withholding from removal) application; (2) Count II – the Fifth Amendment prohibits removal of a person to a country where he or she will face persecution, torture, or cruel and unusual punishment without due process; (3) Count III – international law prohibits the removal of a person to a country where he or she will face torture, cruel, inhuman, or degrading treatment, and this will be violated by removal because Respondents have taken no precautions to ensure proper health care or protection of Petitioner after removal; (4) Count IV – the Fifth Amendment requires adequate medical treatment of detainees, and Respondents violated Petitioner's right to medical care while in detention and are denying medical care by scheduling and threatening to carry out deportation while knowing that Petitioner needs specialized medical

care that will not be available in El Salvador; and (5) Count V – the Rehabilitation Act of 1973 requires adequate medical care and Petitioner has been denied adequate medical care and will continue to be denied care.

The Prayer for Relief then asks this Court to (1) assume jurisdiction; (2) declare Petitioner's detention to be unlawful and unconstitutional; (3) order Petitioner to be provided with adequate medical treatment for the duration of his illness or assurance that such medical treatment can and will be provided, including medication and placement in inpatient treatment as needed; and (4) order Petitioner's release from custody, forthwith, or, *in the alternative* (5) order Respondents to provide Petitioner with a full and complete medical evaluation prior to deportation; or, *in the alternative*, (6) enjoin Respondents from removing Petitioner until he has exhausted procedures allowing for the full adjudication of his immigration status and (7) enjoin Respondents from transferring Petitioner outside of this judicial district pending litigation of this matter or his removal proceedings; and, in addition, (8) award reasonable costs and attorney's fees and (9) grant any other equitable relief the Court deems just.

The first set of relief -- declare Petitioner's detention to be unlawful and unconstitutional; order Petitioner to be provided with adequate medical treatment for the duration of his illness or provide assurance that such medical treatment can and will be provided, including medication and placement in inpatient treatment as needed, and order Petitioner's release from custody – is moot or is barred by REAL ID. With regard to Petitioner's detention and provision of medical care, he is no longer detained, and thus these claims and associated requests for relief are moot. To the extent the first set of relief seeks Petitioner's release from custody or to prevent removal until assurances about medical care are obtained, Petitioner is challenging the order of removal, and this Court lacks jurisdiction.[4]

The second set of relief -- order Respondents to provide Petitioner with a full and complete medical evaluation prior to deportation – is moot given Petitioner's removal because the Court can

---

4 Claims asserting conditions of confinement, asserting that treatment while in custody renders that custody illegal, are claims that state and federal prisoners typically raise in federal court pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) and fall outside the historical core of the writ of habeas corpus. *Aamer v. Obama*, 742 F.3d 1023, 1030 (D.C. Cir. 2014). Regardless of whether the writ of habeas corpus is available to raise Petitioner's claims concerning his medical treatment while in custody, the habeas claims are moot. Petitioner does not seek damages, and the Petition classifies itself strictly as a petition for habeas corpus, and the Court therefore does not construe the Petition as asserting any claims under *Bivens*.

no longer provide the requested relief. Further, to the extent Petitioner sought to delay execution of the removal order, the requested relief is outside the Court's jurisdiction under REAL ID. *See* 8 U.S.C. § 1252(g) (notwithstanding 28 U.S.C. § 2241, no court shall have jurisdiction to hear any claim by an alien arising from the decision or action by the Attorney General to execute removal orders, except as provided by § 1252).

The third set of relief -- enjoin Respondents from removing Petitioner until he has exhausted procedures allowing for the full adjudication of his immigration status – is, as will be discussed below, a challenge to the removal order despite being anchored on alleged due process violations. In addition, this request is moot given that Petitioner has been removed.

Thus, Petitioner's claims are either moot (assuming they are even cognizable in an action for habeas corpus) or their review in this Court is barred by the REAL-ID Act.[5] As noted, "a petition for review filed with an appropriate court of appeals in accordance with [§ 1252] shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. §1252(a)(5). In addition, "a petition for review filed with an appropriate court of appeals in accordance with [§ 1252] shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment of Punishment." *Id.* § 1252(a)(4). Section 1252(b)(9) further provides,

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

---

5 With regard to Petitioner's due process challenge to the removal order, Petitioner was in custody at the time he filed his petition. Courts have held that certain collateral consequences from removal may keep a habeas petition from being moot. For example, this Court recently held in *Bansci v. Nielsen*, 321 F. Supp. 3d 729 (W.D. Tex. 2018), that a petitioner's deportation bars him from seeking reentry into the United States for a period of five years, a penalty that has been found to constitute a cognizable collateral consequence preventing a habeas petition from becoming moot. *Id*. at 734-35 (citing 8 U.S.C. § 1182(a)(9)(A)(i); *see also Geronimo v. Mukasey*, 535 F.Supp.2d 808, 811–12 (W.D. Tex. 2008) (providing petitioner's petition was not moot because removal barred him from seeking reentry for twenty years). Petitioner has not pointed to any such consequences from removal that would keep his petition from becoming moot by his removal, but likely such collateral consequences would exist. However, because the Court nevertheless concludes that it lacks subject matter jurisdiction because of the jurisdiction-stripping provisions of the REAL-ID Act, it need not decide definitively whether this habeas claim is moot.

This provision was designed to consolidate and channel review of all legal and factual questions, including constitutional and statutory challenges, that arise from removal into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals. *Albores Flores v. Hartnett*, No. 10-2159 ADM/AJB, 2010 WL 3283491, at *3 (D. Minn. Aug. 18, 2010). Thus, all aliens get "one bite at the apple" with regard to challenging an order of removal via a petition for review in the court of appeals, and the only permissible habeas claims touching on removal orders are those that arise independently of those orders and do not challenge, directly or indirectly, their legal or factual basis. *Guanlao v. Zedde*, No. 1:16-CV-00018, 2016 WL 6469320, at *4 (D.C. Mariana Islands Oct. 31, 2016); *Albores Flores*, 2010 WL 3283491, at *2 ("The case law supports district court jurisdiction over claims that are found to be independent of removal challenges.").

Claims that have been found to not directly or indirectly challenge removal orders include claims challenging certain conditions of confinement, due process claims under *Zadvydas v. Davis* challenging the duration of detention when the Government is unable to timely execute a removal order,[6] and limited claims asserting constitutional violations arising after a notice of removal was issued and not undermining the validity of the notice of removal. For example, in *Singh v. Gonzales*, 499 F.3d 969 (9th Cir. 2007), the Ninth Circuit found that petitioner's habeas claim of ineffective assistance of counsel in failing to timely file an appeal of an immigration judge's decision was not barred because it did not seek judicial review of the underlying removal order, but only "a day in court" on the issue, notwithstanding that the petitioner's ultimate goal was to overturn the removal order. The ineffective assistance of counsel occurred after the removal order and the only remedy sought was allowing the appeal, and thus it did not challenge the removal order.

On the other hand, due process challenges to the proceedings underlying removal orders do challenge the removal orders, and claims of lack of counsel during immigration proceedings have

---

6 Petitioner is correct that REAL ID does not preclude review of challenges to *detention* rather than removal orders, citing cases in which a petitioner challenges prolonged detention after a removal order is issued. But his assertion that he is not challenging the removal order but "violations of his due process rights that preceded the final removal order," including inadequate notice of his removal hearing and inadequate review of his claims, shows that his alleged due process challenges to removal are in fact indirect challenges to the removal order, not to detention. His asserted due process challenges seek to render void the removal order (or at least delay it), and thus the claims are not independent of the removal order.

been held barred from habeas review. *E.g.*, *Verde-Rodriguez v. Attorney General*, 734 F.3d 198 (3d Cir. 2013) (deciding "whether a challenge to the procedure of a removal hearing qualifies as a challenge to the removal order" and concluding that it does because the petitioner alleged errors on which the validity of the final order of removal were contingent and the relief sought would be clearly inconsistent with the order of removal); *Garcia de Rincon v. Dept. of Homeland Security*, 539 F.3d 1133 (9th Cir 2008) (collateral attack on expedited removal order on due process grounds in underlying proceedings barred in district court, though constitutional claims may be raised in court of appeals); *Aguilar v. U.S. Immigration & Customs Enforcement*, 510 F.3d 1, 13-14 (1st Cir. 2007) (claims of deprivation of right to counsel during removal proceedings are not sufficiently separate from the removal proceedings to be considered either independent or collateral such that they cannot be brought in the district court, but may be raised before the IJ, BIA, and ultimately the court of appeals); *Hamama v. Adducci*, 258 F. Supp. 3d 828, 838 (E.D. Mich. 2017) (noting that attempts to characterize claims as due process claims unrelated to orders of removal had been generally rejected and citing cases), *rev'd on other grounds* 912 F.3d 869 (6th Cir. 2018) (affirming the district court's conclusion that it lacked jurisdiction); *Wheeler v. Unknown Named Agents of ICE*, No. 16-6655 DOC (SS), 2016 WL 6126260, at *3 (C.D. Calif. Oct. 20, 2016) (petitioner's claim that her right to counsel was violated when she was housed in solitary confinement, without access to her attorney, fourteen days before her asylum hearing and twenty-four hours before her bond hearing arose directly from removal proceedings and were barred in district court, but could be raised in administrative proceedings and petition for review with court of appeals).

Even an argument presented in a similar case that claimed to solely challenge the manner in which the Government may execute a removal order was held to be barred by REAL ID. In *Saavedra De Barreto v. Immigration & Naturalization Service*, 427 F. Supp. 2d 51 (D. Conn. 2006), the IJ denied the petitioner's application for withholding under the CAT, and the petitioner did not appeal. Petitioner later filed a petition for writ of habeas corpus, asserting that if she were removed to Columbia she would face danger as a result of her cooperation with the Government as an informant. She asserted a Fifth Amendment right to protection from removal to Columbia (she did not challenge the Government's right to remove her to some other country), and the district court concluded that such a claim was subject to REAL ID's jurisdictional bar and could only be

reviewed in the courts of appeals. Specifically, it concluded that "the issues that will be raised in Petitioner's claim for injunction would have to include review of the IJ's and BIA's procedures and decisions in choosing to remove her to Columbia" and thus was "another way to challenge her order of removal" by seeking its restriction. *Id.* at 58.

In this case, Petitioner's attempt to classify his remaining claims as due process claims independent of the order of removal must fail. He contends that he received inadequate notice of the October 30, 2017 hearing, that he had no counsel at the hearing and was unable to understand the proceedings, that he was unduly influenced by HSI agents, that there was an inadequate review and deliberation of his claims by the IJ, and that the same IJ denied his motion to reopen as untimely. But these claims all relate to the validity of the October 30, 2017 decision by the IJ denying Petitioner's withholding from removal -- they are all issues upon which the validity of the order of removal is contingent and the relief sought would be clearly inconsistent with the order of removal. Further, to the extent Petitioner contends that his removal would violate the CAT, section 1252(a)(4) expressly divests this Court of jurisdiction to review any cause or claim under the CAT. Accordingly, because the REAL-ID Act divests the district courts of jurisdiction over § 2241 habeas petitions attacking removal orders, the Court finds that the claims fall within the scope of the REAL-ID Act and its limitations on habeas review.

REAL ID further strips this Court of jurisdiction to review Petitioner's claims under the APA, federal question jurisdiction, All Writs Act, Mandamus Act, or any other asserted basis for jurisdiction. Thus, all claims must be dismissed.

**B. Whether the REAL-ID Act as applied violates the Suspension Clause**

Because the Court has found that Congress stripped this Court of habeas jurisdiction, it must consider whether the REAL-ID Act, as applied in this case, violates the Suspension Clause. The Court has jurisdiction to determine whether the elimination of its federal habeas jurisdiction violates the Suspension Clause. *Umuhoza v. U.S. Dept. of Homeland Security*, 3:05CV164, 2008 WL 11352573, at *7 (S.D. Ohio 2008).

The Suspension Clause of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. To determine whether a jurisdiction-stripping statute violates the Suspension Clause, the Court applies the two-step

analysis established by *Boumediene v. Bush*, 553 U.S. 723 (2008). The Court first determines whether a habeas petitioner is prohibited from invoking the Suspension Clause due to some attribute of the petitioner or to the circumstances surrounding his detention or removal. *Id*. at 739. Only after confirming that the petitioner is not prohibited from invoking the Suspension Clause does the Court then turn to the second step of this inquiry and consider whether the substitute for habeas corpus provided by the jurisdiction-stripping statute is adequate to test the legality of the petitioner's removal. *Castro v. United States Dep't of Homeland Security*, 835 F.3d 422, 438 (3d Cir. 2016), *cert. denied*, 137 S. Ct. (2017).

The Court does not find a Suspension Clause violation as applied to these facts. Petitioner fails the second step of the analysis because he has an adequate alternative procedure to habeas review. Courts of appeals have generally rejected challenges to REAL ID under the Suspension Clause, finding that REAL ID provides adequate alternative review through the administrative process and review in the court of appeals. *See, e.g.*, *Iasu v. Smith*, 511 F.3d 881, 893 (9th Cir. 2007) ("a potential motion to reopen at the administrative level and the possibility of judicial review thereafter provides the necessary process to alleviate Suspension Clause concerns" where petitioner asserts that he is actually a citizen); *Gonazalez-Alarcon v. Macias*, 884 F.3d 1266 (10th Cir. 2018) (same); *Muka v. Baker*, 559 F.3d 480 (6th Cir. 2009) ("every circuit court to confront this issue has agreed that, facially, the petition for review filed in the court of appeals provides an adequate and effective process to review final orders of removal, and thus the elimination of habeas relief does not violate the Suspension Clause"); *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 105 (2d Cir. 2008) ("we conclude that the Suspension Clause is not violated by the REAL ID Act").

It is undisputed that Petitioner could and has raised his due process arguments in his motion to reopen with the IJ and the BIA, and that the BIA expressly considered them. Petitioner's removal did not preclude further consideration of the motion by the BIA, which ultimately affirmed the IJ's decision. And Petitioner could, and now has, sought review in the Fifth Circuit Court of Appeals, as directed and contemplated by REAL ID. In addition, Petitioner has had available and has utilized procedures to request a stay of removal while his motion to reopen has proceeded, though they have not all been fruitful. These procedures provide an adequate alternative to review by writ of habeas corpus in the district court. Petitioner has not demonstrated

that he is unable to obtain review of his claims under REAL ID. Although the Court is mindful of the circumstances at the time, the fact that Petitioner did not object during the October 30, 2017 hearing before the IJ to the lack of notice or raise certain known arguments (lack of counsel, HSI agent influence) at that hearing and that he waived his right to appeal, even if it was the result of improper influence by HSI agents (which the Court cannot and does not decide), does not require habeas review in the district court to satisfy the Suspension Clause's requirements when Petitioner has available alternative avenues to raise these issues through the administrative and petition for review process. *See Muka v. Baker*, 559 F.3d 480, 487 (6th Cir. 2009)

The Court is also mindful that some courts have recently sustained as-applied challenges in specific circumstances, specifically granting habeas relief to stay removal while aliens pursue their alternative remedies in the administrative process and court of appeals, but those cases are distinguishable. In *Osorio-Martinez v. Attorney General*, 893 F.3d 153 (3d Cir. 2018), the Third Circuit found a Suspension Clause violation when the provisions for restricted review applicable to expedited removal orders were applied to immigrant children who had attained special immigrant juvenile status. Because review of expedited removal orders under §1252(e) is highly restricted even in the courts of appeals, it did not provide adequate substitute procedures for the writ. As noted above, this case does not appear to involve an expedited removal order and thus review is not so restricted.

The district court in *Hamama v. Adducci* issued a TRO and preliminary injunction preventing removal of Iraqi nationals until their arguments of allegedly changed country conditions could be heard. 261 F. Supp. 3d 820 (S.D. Mich. 2017). Before issuing the injunction, the district court reviewed its jurisdiction and found that application of the jurisdiction-stripping provisions of REAL ID presented an as-applied Suspension Clause violation, allowing it to exercise jurisdiction. The district court found that allowing aliens to file motions to reopen proceedings in immigration courts and subsequent review in the courts of appeals as a substitute for habeas relief ignored "real-world circumstances" present in the case in light of the fact that petitioners would be removed before their assertion – based on facts that came into existence after adjudication of their removal orders – that removal would expose them to the substantiated risk of death or torture could be adjudicated. The district court emphasized that the claims ripened after the order of removal was issued, and that the petitioners would be removed before the claims could

be adjudicated, placing them at risk in the interim.[7]

In this case, the factual basis for Petitioner's claims – that he was denied due process in his immigration proceeding on October 30, 2017 – generally did not arise after the hearing and is not based on changed country conditions occurring after October 30, 2017. Petitioner expressly notes that he is "challenging violations of his due process rights that *preceded* the final removal order, including, *inter alia*, inadequate notice of his removal hearing, inadequate review of his claims, and a lack of adequate medical care during his detention." Docket no. 6 at 20 (emphasis added).

To the extent Petitioner's claims are based on events that occurred after the October 30, 2017 determination, such as any increased risk to Petitioner after removal due to his cooperation with HSI from November through February, the Sixth Circuit in *Hamama* reversed the district court, finding that the motion to review process followed by a petition for review in the court of appeals "provides an alien with the same scope of relief as habeas" and "the REAL ID Act does not violate the Suspension Clause." *Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018). It rejected an as-applied challenge, finding that the petitioners had adequate time to file motions to reopen and that the administrative scheme "even provided multiple avenues to stay removal while pursuing relief" such that they had not shown any constitutional inadequacy in the process. *Id.* at 876-77.

Even more fundamentally, the Sixth Circuit concluded that the type of relief sought – a stay of removal until petitioners had a reasonable period of time to locate counsel and pursue a motion to reopen through the courts of appeals – was not core habeas relief and thus did not even trigger the Suspension Clause. *Id.* at 875-76. In this case, Petitioner sought both a release from custody and a stay of removal. To the extent his request for a stay is not mooted by his removal, the availability of such relief via habeas relief in the district court is cast into serious doubt by the Sixth Circuit's decision.

---

7 A few other district court opinions have also recently found as-applied Suspension Clause violations in situations similar to *Hamama* – changed country circumstances arising after the removal order was entered and presenting risk to the petitioner. *Devitri v. Cronen*, 289 F. Supp. 3d 287 (D. Mass. 2018); *Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1142202 (N.D. Calif. Mar. 2, 2018); *Chhoeun v. Marin*, 306 F. Supp. 3d 1147 (C.D. Calif. 2018). However, Judge Ellison in the Southern District of Texas has noted that those cases were based on petitioners invoking their statutory right to file a motion to reopen asylum claims based on changed conditions in the countries to which they face removal, citing 8 U.S.C. § 1229a(c)(7)(C)(ii). *Alam v. Nielsen*, 312 F. Supp. 3d 574 (S.D. Tex. 2018). Petitioner in this case does not appear to invoke a statutory right to reopen.

Judge Guaderrama also recently considered a similar case seeking a stay of removal, and declined to issue the stay. He concluded that "the REAL ID Act stripped this Court of jurisdiction to decide Petitioner's request for a stay of removal and TRO," and "this prohibition also strips the Court of jurisdiction to hear Petitioner's claims under the APA and the Declaratory Judgment Act." *Mohumud v. Joyce*, No. EP-18-CV-00102-DCG, 2018 WL 1547848 (W.D. Tex. Mar. 29, 2018). Addressing the Suspension Clause issue, he discussed recent conflicting cases on whether the Suspension Clause requires an exercise of habeas jurisdiction and a stay and noted that the cases "do not provide the Court with a clear answer." *Id.* at *2. Nevertheless, he found "a distinguishing factor that did not exist in the [other cases issuing a stay of removal] – an IJ considered the petitioner's motion to reopen and denied it; the petitioner next filed an appeal and a Motion for a Stay of Removal before the BIA; and finally, the BIA denied the Motion for a Stay of Removal. *Id.* Judge Guaderrama thus found that the petitioner "had an adequate and effective substitutionary remedy" insofar as an IJ heard and ruled on his motion to reopen and the BIA heard and denied his motion to stay removal, and the district court lacks jurisdiction to review and overturn the BIA's determination. The same is true in this case.

Petitioner has failed to demonstrate an as-applied Suspension Clause violation in this case, and the Court lacks habeas jurisdiction to afford any of the requested relief.

## Conclusion

Most of Petitioner's claims are moot. To the extent any claims are not moot, the Court lacks jurisdiction over the claims under the jurisdiction-stripping provisions of the REAL-ID Act. This case is therefore DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

SIGNED this 8th day of February, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE